*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

HOOPER HATHAWAY, PC,

        Plaintiff/Counterdefendant,

and

KOHN FINANCIAL CONSULTING, LLC,

        Intervening
        Plaintiff/Counterdefendant-Appellee,

v

ATLAS TECHNOLOGIES, LLC, and
PRODUCTIVITY TECHNOLOGIES
CORPORATION,

        Defendants/Counterplaintiffs-
        Appellants,

and

RICHARD J. LANDAU,

        Appellant.

UNPUBLISHED
February 24, 2022

No. 354976
Washtenaw Circuit Court
LC No. 18-001131-CB

Before: GLEICHER, C.J., and SERVITTO and LETICA, JJ.

PER CURIAM.

In this action arising from unpaid fees for professional services, defendants/counterplaintiffs (defendants) Atlas Technologies, LLC (Atlas), and Productivity Technologies, Corporation (PTC), appeal as of right the order granting summary disposition under MCR 2.116(C)(9) (failure to state a valid defense) and MCR 2.116(C)(10) (no genuine issue of material fact) in favor of intervening plaintiff/counterdefendant Kohn Financial Consulting, LLC (KFC), on KFC's claims for breach of contract and account stated, as well as its alternative claims

-1-

for promissory estoppel and unjust enrichment. The trial court's order also dismissed defendants' counterclaim against KFC for accounting malpractice and found the counterclaim frivolous. Finding no error requiring reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case arises from defendants' alleged failure to pay KFC for professional services rendered in relation to federal lawsuits filed by defendants against their former manager and director. PTC is a holding company whose sole asset is Atlas, a manufacturing company created by PTC in 2011. From the time of Atlas's creation until March 2016, Atlas's board of managers consisted of Jesse Levine, Samuel Seidman, and Arthur Stupay, who also served as PTC's directors.

In March 2016, Jesse Levine was fired from Atlas, and in August 2016, defendants filed two lawsuits against Jesse and his father, Julius Levine, in federal court. The lawsuits alleged "fraud, breach of fiduciary duty, conversion, and tortious interference." The Levines responded with multiple counterclaims against defendants and derivative claims against Seidman and Stupay.

Defendants were represented in the federal lawsuits by Hooper Hathaway attorneys Angela Jackson and Adam Linkner. In November 2017, Jackson contacted KFC for an independent financial expert to provide services for the federal cases. Jackson discussed KFC's retention with Seidman, Stupay, and Atlas's Vice President of Finance, Kimberly Nation, and e-mailed them KFC's "Engagement Letter, Engagement Terms and Conditions and a Retainer Invoice for a retainer of $5,000." Seidman and Stupay authorized Nation to pay the retainer and, on November 17, 2017, Nation wired the $5,000 retainer fee to KFC on defendants' behalf. KFC's principal, Mauricio Kohn (Kohn), asked for an interim payment of $10,000 "given the volume of work being done." Three days later, KFC issued to defendants its "Preliminary Independent Expert Report." On December 1, 2017, after receiving authorization from Seidman and Stupay, Nation wired KFC $10,000. She also e-mailed Kohn that the KFC team "did an amazing job" on the report. On December 30, 2017, KFC invoiced defendants for a balanced owed of $19,784.75 for services rendered through November 30, 2017.

KFC was also asked to review a report prepared by Charles Hoebeke, the Levines' expert for the federal lawsuits. KFC issued its preliminary rebuttal report of Hoebeke's opinion on January 2, 2018. In February 2018, KFC invoiced defendants for a balance owed of $44,331.25. On March 22, Nation e-mailed Kohn to explain that defendants were cash-strapped at the moment, but that they intended to pay KFC's invoices and would pay $4,000 a week until their indebtedness was cleared. The next day, defendants made their first and only $4,000 payment.

By June 2018, defendants agreed to a settlement with the Levines. The Levines outspent defendants on attorney fees nearly two to one. They pushed defendants nearly to bankruptcy by filing numerous UCC liens and destroying the companies' credit. Seidman and Stupay, who were in their 80s, no longer wished to pursue the lawsuit and against their attorneys' advice, accepted an unfavorable settlement agreement that ceded control of their businesses. Defendants' claims were dismissed, defendants granted a $750,000 note to Julius Levine as indemnification for litigation costs, and Seidman and Stupay resigned from PTC's board, relinquishing their stock to Jesse and the Levine family. In response to Hooper Hathaway's requests for payment, defendants'

present attorney (who had represented the Levines in the federal suit) sent a settlement demand to Hooper Hathaway detailing the law firm's alleged professional malpractice relative to the federal litigation and requesting a response by the end of the month. Hooper Hathaway responded by filing this action against defendants to recover unpaid legal fees, asserting claims for breach of contract, account stated, promissory estoppel, and unjust enrichment. Defendants raised a counterclaim against Hooper Hathaway for professional malpractice and sought nearly $2.8 million in damages. By stipulation of the parties, KFC intervened in the action to recover from defendants $42,812.44 in unpaid fees. Defendants responded by asserting a counterclaim against KFC for accounting malpractice, seeking $2.7 million in damages.

KFC moved to compel arbitration, arguing that its engagement terms and conditions contained an enforceable provision requiring the parties to arbitrate their disputes. Defendants opposed the motion, alleging that an express agreement to arbitrate did not exist because the engagement letter was not signed by an authorized representative. Defendants further argued that, even if they had agreed to arbitrate, KFC waived that right when it submitted the parties' dispute to the trial court by moving to intervene in the litigation, filing a complaint, and a first amended complaint, all without mentioning the arbitration agreement. The trial court adopted defendants' argument and denied KFC's motion without hearing oral argument. KFC moved for reconsideration, submitting that a signature was not required because the engagement terms and conditions expressly stated that payment of KFC's retainer constituted assent to the agreement, and defendants indisputably paid KFC's retainer.[1] The trial court denied KFC's motion for reconsideration.

In May 2019, Hooper Hathaway moved for summary disposition of the claims in its complaint, and in October 2019, the trial court granted this motion and dismissed defendants' professional-malpractice claim against the law firm. Two months later, KFC moved for summary disposition of its claims and of defendants' counterclaim. KFC argued that it was entitled to summary disposition of its account-stated claim because it presented prima facie evidence of the amount that defendants owed, defendants expressly accepted KFC's invoices and promised to pay them, and they failed to object to any of the invoices within a reasonable time. KFC asserted that it was entitled to summary disposition of its breach-of-contract claim because extensive evidence established that Nation had actual authority, or at least apparent authority, to bind defendants to KFC's engagement letter. Further, the engagement letter was enforceable despite the absence of a signature because defendants manifested their acceptance of the engagement terms and conditions by paying KFC's retainer fee. KFC alleged in the alternative that all the elements of promissory estoppel and unjust enrichment had been met. Lastly, KFC contended that summary disposition of defendants' counterclaim was appropriate, primarily because KFC was entitled to witness immunity. Both Hooper Hathaway and KFC presented affidavits from Seidman, Stupay, and Nation with their motions, as well as invoices and e-mails tracing the parties' interactions.

---

[1] The relevant provision states: "In lieu of signing the Engagement Letter, you agree that payment of the Retainer Fee indicates your acceptance to these Terms and Condition and shall be construed as if the Engagement Letter had been signed."

In opposition, defendants contended that summary disposition was premature because there had been no document discovery or depositions taken in their case with KFC. Defendants also submitted that KFC's claim for breach of contract failed because the trial court had rejected the argument that the engagement letter was an enforceable contract when ruling on KFC's motion for arbitration. Addressing its counterclaim for accounting malpractice, defendants asserted that it was not barred by witness immunity in light of recent caselaw and that Hoebeke's affidavit supported each element of the counterclaim. It was further alleged that summary disposition of KFC's account-stated claim was inappropriate because there remained disputed fact questions about how much defendants owed as of May 2018, and whether they received KFC's second invoice before the change in management, after which Nation would not have been authorized to accept or to pay the invoice. Defendants did not include affidavits outlining the Levines' version of events. They also failed to present depositions from the federal lawsuits that their counsel asserted would contradict the affidavits of Seidman, Stupay, and Nation.

In a written opinion and order, the trial court granted KFC's motion for summary disposition and dismissed defendants' counterclaim for professional malpractice. The court granted summary disposition in favor of KFC on its account-stated claim on the basis that KFC established prima facie evidence of the amount defendants owed. Additionally, undisputed affidavits from the representatives to the agreement, i.e., Seidman, Stupay, and Nation, supported the premise that KFC should be paid for the work it performed. There being no genuine issue of material fact that defendants owed KFC the amount claimed, the trial court granted summary disposition under MCR 2.116(C)(10). The trial court also granted summary disposition to KFC under MCR 2.116(C)(9) on the basis that defendants' answer failed to deny the allegations. The trial court granted summary disposition in favor of KFC on its breach-of-contract claim after finding that extensive evidence established that Nation was an authorized agent for defendants, or at least an apparent agent, and that parties' conduct had given rise to an implied contract that defendants would pay KFC for accounting services rendered.[2] Lastly, the trial court dismissed defendants' counterclaim against KFC, finding that it was frivolous because it was "not grounded in law as it relates to the facts of this case." Defendants moved unsuccessfully for reconsideration. This appeal followed.

## II. ANALYSIS

### A. STANDARDS OF REVIEW

This Court reviews de novo a circuit court's decision on a motion for summary disposition, as well as the existence and interpretation of a contract. See *Dunn v Bennett*, 303 Mich App 767, 774; 846 NW2d 75 (2013); *Dextrom v Wexford* Co, 287 Mich App 406, 416; 789 NW2d 211 (2010). The trial court granted summary disposition of all KFC's claims under MCR 2.116(C)(10). A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint and is properly granted when there are no genuine issues of material fact and the movant is entitled to summary

---

[2] The trial court also granted KFC summary disposition on its alternative claims of promissory estoppel and unjust enrichment, finding that evidence established the elements of these two claims.

disposition as a matter of law. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012); *Michalski v Bar-Levav*, 463 Mich 723, 730; 625 NW2d 754 (2001).

## B. ACCOUNT STATED

Defendants contend that the trial court erred by granting summary disposition in favor of KFC on its claim for account stated when there remained disputed questions of fact regarding which invoices defendants received before settlement of the federal cases required Seidman and Stupay to resign from PTC's board, thereby clearly depriving Nation of any authority to accept and approve invoices. We disagree.

In *Dunn*, 303 Mich App at 770-771, this Court explained account stated as follows:

> An "account stated" refers to a "contract based on assent to an agreed balance," which, like all contracts, must be created through mutual assent. *Fisher Sand & Gravel Co v Neal A Sweebe, Inc*, 494 Mich 543, 557, 561-562; 837 NW2d 244 (2013) (citation and quotation marks omitted). "[P]arties *assent* to a sum as the correct balance due from one to the other; and whether this operation has been performed or not, in any instance, must depend upon the facts." *White v Campbell*, 25 Mich 463, 468 (1872). An express contract arises when the parties expressly agree to the sum due. *Fisher Sand & Gravel Co*, 494 Mich at 558. A party's acceptance may also be inferred when the party makes payments on the amount due or receives an accounting and fails to object within a reasonable time. [Emphasis in original.]

An account-stated claim can be proven "by evidence of an express understanding, or of words and acts, and the necessary and proper inferences from them." *Keywell & Rosenfeld v Bithell*, 254 Mich App 300, 331; 657 NW2d 759 (2002) (citation omitted). "When an account is stated in writing by the creditor and accepted as correct by the debtor, either by payments thereon without demur or by failure within a reasonable time to question the state of the account as presented, it becomes an account stated." *Corey v Jaroch*, 229 Mich 313, 315; 200 NW 957 (1924).

An account-stated claim may also be established in accordance with MCL 600.2145.[3] If a plaintiff files an account-stated claim with "an affidavit of the amount due," submits a copy of the

---

[3] MCL 600.2145 states in relevant part:

> In all actions brought in any of the courts of this state, to recover the amount due on an open account or upon an account stated, if the plaintiff or someone in his behalf makes an affidavit of the amount due, as near as he can estimate the same, over and above all legal counterclaims and annexes thereto a copy of said account, and cause a copy of said affidavit and account to be served upon the defendant, with a copy of the complaint filed in the cause or with the process by which such action is commenced, such affidavit shall be deemed prima facie evidence of such

account, and serves the defendant with these materials, "such affidavit shall be deemed prima facie evidence of such indebtedness, unless the defendant with his answer, by himself or agent, makes an affidavit and serves a copy thereof on the plaintiff or his attorney denying the [indebtedness]." MCL 600.2145.

Nevertheless, defendants allege that summary disposition was precluded because there remains a fact question regarding whether defendants received invoices totaling $42,812.44 before the June 2018 change in management. Defendants attached to their motion for summary disposition an Atlas invoice dated May 10, 2018, and showing that defendants owed KFC only $15,748.75.[4] On June 12, 2018, KFC e-mailed Hooper Hathaway attorney Jackson and Nation an invoice showing the total owed by defendants. In a June 13, 2018 e-mail, Nation told Kohn that her records did not accord with his and asked him to send her defendants' account history so that she could reconcile her records. Defendants rely on this e-mail exchange to: (1) contest KFC's statement that defendants "received and accepted" the invoices for which KFC seeks payment; (2) suggest that no one at the defendant companies knew that there was an additional invoice to which to object until after the June 2018 change in management, and (3) argue that summary disposition was precluded by the existence of a "question of material fact as to what invoices properly form the basis of KFC's account-stated claim." None of these arguments are convincing.

Although an express contract arises when parties agree to a sum due, a party's acceptance of the sum due may also be inferred when the party "receives an accounting and fails to object within a reasonable time." *Dunn*, 303 Mich App at 771; see also *Fischer Sand & Gravel*, 494 Mich at 558 (indicating that a party's failure to object to an account within a reasonable time may be deemed as an admission that the amount stated is correct). Assuming for the sake of argument that KFC did not send, or Nation did not record, KFC's February 2018 invoice, it is undisputed that KFC sent defendants their entire billing history by June 13, 2018. The record shows that defendants received monthly invoices in July, August, September, October, and December 2018, that the September and October invoices were copied to Jesse Levine, and that the December invoice was copied to defendants' current attorney. Defendants fail to dispute these facts. Addressing whether an objection was raised within a reasonable time, defendants argue that no one at the defendant companies knew that there was an additional invoice to which to object until after the June 2018 change in management. Assuming this to be true, it still does not explain why, after defendants received several invoices for unpaid balances after June 2018, at least two of which were copied to Jesse Levine and one to defendants' current attorney, defendants still failed to object to any of the invoices. Because defendants received multiple invoices from KFC showing a balance owing, yet failed to object to any of them, defendants may be considered to have admitted the correctness of the amount owed, and KFC was justified in treating the balance owing as an

---

indebtedness, unless the defendant with his answer, by himself or agent, makes an affidavit and serves a copy thereof on the plaintiff or his attorney, denying the same.

[4] Defendants owed $19,748.75 at the end of December 2017 and made a $4,000 payment in March, leaving Nation's balance of $15,748.75. This balance does not reflect KFC's February 2018 invoice, which added $29,582.50 to an outstanding balance of $19,748.75, and credited the $5,000 retainer fee, for a balance of $44,331.25. Therefore, it appears that Nation either failed to receive, or failed to record, KFC's February 2018 invoice.

account stated. See *Fisher Sand & Gravel*, 494 Mich at 558 ("[A]s against a party receiving an account, and not objecting to it within a reasonable time, its correctness may be considered admitted by him, and the balance as the debt; or, in other words, that the party rendering the account may, under such circumstances, treat it as an account stated . . . .") (quotation marks and citation omitted).

Next, defendants assert that the trial court ignored the fact that neither Seidman nor Stupay mentioned in their affidavits the KFC engagement letter or acknowledged retaining KFC. Furthermore, Stupay's uncontested testimony was that he and Seidman decided to rely on Nation's testimony alone to support the litigation in federal court and thus never retained an expert because of the "costs associated with retaining a forensic accountant." Defendants misrepresent Stupay's affidavit testimony, which was filed to rebut defendants' counterclaim against Hooper Hathaway for legal malpractice. Stupay stated in his affidavit:

> Hooper Hathaway advised me that [defendants] should obtain the services of a forensic accountant to analyze the evidence supporting the claims against the Levines prior to filing the Litigations. But Seidman and I decided to rely upon Nation's investigation in lieu of retaining a forensic accountant because of the costs associated with retaining a forensic accountant.

This statement was intended to rebut defendants' allegation that, among their many acts of malpractice, Hooper Hathaway "did not seek to obtain in advance the independent opinion of a forensic accountant or other qualified person regarding the claims being considered by [defendants]." Stupay's statement addresses hiring a forensic account *before* defendants filed their complaints in federal court in August 2016, to analyze "the evidence supporting the [federal] claims." This pre-litigation decision has no bearing on defendants' decision to hire KFC well after federal litigation had begun.

We conclude that defendants have failed to present evidence raising a genuine issue of material fact regarding the amount owed KFC or whether defendants, through Seidman and Stupay, agreed to retain KFC. Therefore, the trial court did not err by granting KFC's motion for summary disposition of its account-stated claim.

## C. BREACH OF CONTRACT

Defendants also contend that the trial court erred by granting summary disposition in favor of KFC on its breach-of-contract claim because there remained significant factual questions regarding the "existence and terms of the alleged written contract," as well as Nation's authority to bind defendants to a contract. Again, we disagree.

Turning first to Nation's authority, under Michigan law, an agent's authority to bind the principal may be actual or apparent. *Meretta v Peach*, 195 Mich App 695, 698; 491 NW2d 278 (1992). An agent's actual authority "may be implied from the circumstances surrounding the transaction at issue." *Chiamp v Hertz Corp*, 210 Mich App 243, 246; 533 NW2d 15 (1995). "These circumstances must show that the principal actually intended the agent to possess the authority to enter into the transaction on behalf of the principal." *Id.* "Apparent authority arises where the acts and appearances lead a third person reasonably to believe that an agency

relationship exists. However, apparent authority must be traceable to the principal and cannot be established only by the acts and conduct of the agent." *Alar v Mercy Mem Hosp*, 208 Mich App 518, 528; 529 NW2d 318 (1995).

Evidence supports the trial court's conclusion that Nation had actual authority, or apparent authority at a minimum, to engage KFC on defendants' behalf. Jackson attested that she discussed hiring KFC with Seidman, Stupay, and Nation, and that she e-mailed the three of them KFC's engagement letter on November 13, 2017. Jackson further attested that after talking with Seidman, Stupay, and Nation, she understood Nation to be defendants' representative with authority to hire KFC and to pay its retainer fee. Consequently, she e-mailed Nation another copy of KFC's engagement letter and terms and conditions on November 15, 2017. Nation attested that she, Seidman, and Stupay discussed retaining KFC, and that Seidman and Stupay authorized her to inform Hooper Hathaway of their decision to proceed with the engagement and to pay KFC's $5,000 retainer fee and to actually pay the fee, which she did on November 17, 2017. Nation averred that defendants, through Seidman and Stupay, authorized her to pay KFC's $5,000 retainer fee, which she paid on November 17, 2017. She also attested that defendants, through Seidman and Stupay, authorized her to make an interim payment of $10,000 to KFC, which she made on November 30, 2017.

Defendants contend that evidence exists that raises a question of fact regarding whether Nation had the authority to retain KFC. Yet defendants failed to attach even affidavits to their pleadings. First, defendants argue that whether Nation was validly appointed secretary of PTC is a disputed question of fact. Assuming this to be true, whether Nation was validly appointed secretary of PTC is irrelevant to the matters before this Court. According to the affidavits of Nation and Jackson, Nation did not act under her own authority, but was authorized by defendants, through Seidman and Stupay, to retain and pay KFC.

Second, defendants assert that there is substantial evidence that Nation did not have Seidman and Stupay's authorization to enter into an agreement with KFC on behalf of defendants. Defendants argue that Nation's authority is belied by the fact that Seidman's and Stupay's affidavits are silent regarding any authorization to enter into an agreement with KFC. Defendants repeatedly refer to the "ruinously inconvenient fact" that Stupay unequivocally testified that he decided *against* hiring a forensic account because of the costs of doing so. As we have already indicated, Stupay's affidavit, as well as Seidman's was crafted to rebut defendants' counterclaim against Hooper Hathaway for legal malpractice; therefore, the fact that they do not mention KFC is not sufficient to raise a genuine issue of fact about Nation's authority. The testimonies of Jackson and Nation indicating that, through Seidman and Stupay, defendants discussed hiring KFC in November 2017, decided to retain the accounting firm, and authorized Nation to pay KFC's retainer, in addition to an extra $10,000, is unrefuted. Accordingly, the trial court did not err by concluding that Nation had actual authority to bind defendants.

The trial court also did not err by concluding that the parties' conduct created an implied-in-fact contract.

A contract implied in fact arises under circumstances which, according to the ordinary course of dealing and common understanding, of men, show a mutual intention to contract. A contract is implied in fact where the intention as to it is not

manifested by direct or explicit words between the parties, but is to be gathered by implication or proper deduction from the conduct of the parties, language used or things done by them, or other pertinent circumstances attending the transaction. The existence of an implied contract, of necessity turning on inferences drawn from given circumstances, usually involves a question of fact, unless no essential facts are in dispute. [*Erickson v Goodell Oil Co*, 384 Mich 207, 211-212; 180 NW2d 798 (1970).]

"Courts recognize implied contracts where parties assume obligations by their conduct." *Williams v Litton Sys, Inc*, 433 Mich 755, 758; 449 NW2d 669 (1989).

The essential elements of a contract are parties competent to contract, a proper subject matter, legal consideration, mutuality of agreement and mutuality of obligation. The elements requisite for the establishment of an implied contract are identical. The only difference is the character of the evidence necessary to establish the contract. [*Borg-Warner Acceptance Corp v Dep't of State*, 169 Mich App 587, 590; 426 NW2d 717 (1988), rev'd on other grounds 433 Mich 16 (1989) (citations omitted).]

By contrast, a contract implied in law, or a quasi- or constructive contract, does not require a meeting of the minds, but is imposed by a fiction of law to allow justice to be accomplished. See *Cascaden v Magryta*, 247 Mich 267, 270; 225 NW 511 (1929). Courts "employ the fiction with caution, and will never permit it in cases where contracts, implied in fact, must be established, or substitute one promisor or debtor for another." *Id*.

There can be no serious dispute that defendants and KFC are parties competent to contract, that professional accounting services are a proper contractual subject matter, and that the promise to supply accounting services in exchange for compensation constituted legal consideration. See *Dep't of Natural Resources v Bd of Trustees of Westminster Church of Detroit*, 114 Mich App 99, 104; 318 NW2d 830 (1982) ("Consideration for an agreement exists where there is a benefit on one side or a detriment suffered, or services done, on the other."). It is undisputed that defendants paid a $5,000 retainer fee and a $10,000 interim payment, and that KFC delivered a Preliminary Independent Expert Report. This exchange is an objective manifestation of the parties' mutual assent to exchange accounting services for payment, as well as evidence of the parties' mutuality of obligation. See *Reed v Citizens Ins Co of America*, 198 Mich App 443, 449; 499 NW2d 22 (1993), overruled on other grounds *Griffith v State Farm Mut Auto Ins Co*, 472 Mich 521; 697 NW2d 895 (2005). The conduct of the parties in the present case demonstrated that defendants understood that they were obligated to pay KFC for services rendered, and that KFC understood that, by accepting defendants' retainer fee, it was obligated to perform the requested accounting services. KFC's request for a $10,000 interim payment further demonstrates KFC's understanding that it was obligated to provide certain services and entitled to payment for those services, and defendants' recognition that they were obliged to pay for KFC's services. Likewise, Nation's promise in March 2018 that defendants would make weekly payments against their indebtedness

to KFC, and her payment of $4,000 as partial fulfillment of that promise, is additional evidence of the parties' understanding of the deal they had struck.[5]

Although the existence of an implied-in-fact contract is usually a question of fact, it can be a question of law when no essential facts are in dispute. *Erickson*, 384 Mich at 212. There is no dispute that defendants tendered KFC's retaining fee, that KFC provided accounting services, and that defendants made partial payment for those services. Defendants present neither evidence nor argument that would raise a genuine issue of material fact regarding Nation's authority to bind defendants or that the parties' conduct gave rise to an implied-in-fact contract under which KFC would provide certain accounting services and defendants would pay for the services rendered. Accordingly, the trial court did not err by concluding there was an implied-in-fact contract between defendants and KFC.

The evidence also supports the trial court's conclusion that defendants breached the implied contract with KFC. "A party claiming a breach of contract must establish (1) that there was a contract, (2) that the other party breached the contract and, (3) that the party asserting breach of contract suffered damages as a result of the breach." *Dunn*, 303 Mich App at 774. (quotation marks and citation omitted). In the present case, an implied-in-fact contract arose between defendants and KFC that obligated KFC to provide accounting services to defendants and defendants to pay for the services provided. KFC provided those services, as is evinced by its invoices, detailed time logs, and work product, and defendants paid for only part of the services received, causing KFC to suffer damages in the amount of the unpaid balance.

In light of the foregoing, we conclude that the trial court did not err by grant of summary disposition in favor of KFC's of its claim for breach of contract.[6]

## D. ACCOUNTING MALPRACTICE

Defendants further contend that the trial court erred by dismissing its counterclaim against KFC for accounting malpractice. Specifically, defendants submit that the trial court erred by concluding that a claim for professional malpractice belonged to defendants before June 2018, but not afterward, and that KFC was protected by the doctrine of witness immunity. We conclude that

---

[5] Defendants' argument that the trial court's grant of summary disposition on KFC's breach-of-contract claim reversed its prior denial of KFC's motion to compel arbitration on the basis that defendants had not signed the engagement letter and, therefore, had not agreed to arbitrate their dispute is without merit. The trial court's ultimate finding of an implied contract is not inconsistent with its adoption of defendants' argument that there existed no express contract and, therefore, no obligation to arbitrate. The trial court did not conclude that defendants' remission of KFC's retaining fee constituted acceptance of the engagement terms and conditions, thus creating a binding contract that included an agreement to arbitrate. Accordingly, the trial court did not err by failing to dismiss the case and, in turn, ordering the matter to arbitration.

[6] In light of our disposition of this issue, we need not consider the trial court's ruling on KFC's alternative theories of promissory estoppel and unjust enrichment.

the trial court did not err by dismissing defendants' counterclaim on the ground that Kohn and his work product were subject to the protection of witness immunity.

"Generally, to state a claim for malpractice, a plaintiff must allege (1) the existence of a professional relationship, (2) negligence in the performance of the duties within that relationship, (3) proximate cause, and (4) the fact and extent of the client's injury." *Broz v Plante & Moran, PLLC*, 326 Mich App 528, 537; 928 NW2d 292 (2018), vacated in part on other grounds 504 Mich 892 (2019). In some instances, however, the testimony of expert witnesses, as well as their related evaluations, are shielded by the doctrine of witness immunity.

In *Maiden v Rozwood*, 461 Mich 109, 134; 597 NW2d 817 (1999), our Michigan Supreme Court explained the doctrine of witness immunity as follows:

> [W]itnesses who testify during the course of judicial proceedings enjoy quasi-judicial immunity. This immunity is available to those serving in a quasi-judicial adjudicative capacity as well as "those persons other than judges without whom the judicial process could not function." 14 West Group's Michigan Practice, Torts, § 9:393, p 9-131. Witnesses who are an integral part of the judicial process "are wholly immune from liability for the consequences of their testimony or related evaluations." *Id.*, § 9:394, pp 9-131 to 9-132, citing *Martin v Children's Aid Society*, 215 Mich App 88, 96, 544 NW2d 651 (1996).

Defendants rely on *Estate of Voutsaras by Gaydos v Bender*, 326 Mich App 667; 929 NW2d 809 (2019), to argue that witness immunity does not bar their counterclaim against KFC. This Court held in *Voutsaras* that "licensed professionals owe the same duty to the party for whom they testify as they would to any client and that witness immunity is not a defense against professional malpractice." *Id.* at 670. At issue was whether the plaintiff could sue certain attorneys retained to provide expert testimony. Because the plaintiff's complaint "appear[ed] to allege that the [] defendants provided expert opinions for the benefit of Diana Voutsaras or her attorneys *in addition* to intended expert testimony for the court," *id.* at 675, this Court held that the doctrine of witness immunity did not shield the defendant attorneys from any duty they had to ensure that the additional opinions were professionally competent. See *id.* at 682 (concluding that "[a] professional's client is not precluded from maintaining a professional-malpractice action by witness immunity except to the extent the action is premised on the substance of evidence or testimony prepared for the benefit of the court").

Defendants allege in their brief to this Court that *Voutsaras* stands for the proposition that "a claim may be based on a malpractice theory even if it is 'expected' that the witness will provide expert testimony." Although largely true, defendants' propositional statement lacks sufficient nuance. This Court made clear in *Voutsaras*, 326 Mich App at 682, that a professional-malpractice claim must arise from professional services or opinions *other* than those intended for the court. Defendants have identified no such additional services or opinions in the present case. Rather, alleged deficiencies in KFC's work product, which defendants acknowledged was intended for the federal court, form the basis for their counterclaim for accounting malpractice.

Defendants asserted that KFC's "Preliminary Independent Expert Report" was flawed because KFC did not conduct "a forensic review or any independent analysis of the reasonableness

of the allegations in the [federal] Litigations," but "relied blindly on the allegations of Hooper Hathaway." Defendants faulted the report's list of 40 items as consisting solely of "Kohn's opinion as to whether a stated amount does or does not represent 'conversion' under MCL 600.2919a(1)." Defendants declared that Kohn's "opinions [were] nothing more than deeply flawed and unprofessional guesses that a jury would blindly accept the allegations lodged against the Defendants in the Litigations . . . in order to seek treble damages of approximately $2.7 million," and that the report "was not based on reasonable assumptions and was in violation of the standard of care for a C[ertified] P[ublic] A[ccountant]." As the foregoing quotations from defendants' counterclaim illustrate, defendants' counterclaim rests entirely on deficiencies in the expert report KFC created to prepare for its own expert testimony in the federal court. Witness immunity includes not just witness testimony, but "necessarily extends to any other materials or evidence prepared by the witness for the intended benefit of the court." *Id*. at 675.

In light of the foregoing, we conclude that defendants have failed to show that the trial court erred by granting KFC's motion for summary disposition of defendants' counterclaim on the basis that KFC was entitled to witness immunity.

## E. DISCOVERY

Defendants submit that the trial court erred by granting summary disposition in favor of KFC without allowing additional discovery on disputed issues of fact and without properly considering the affidavit defendants' attorney submitted under MCR 2.116(H)(1). Once again, we disagree.

"In general, summary disposition is premature if discovery on a disputed issue has not been completed." *Walrath v Witzenmann USA LLC*, 320 Mich App 125, 144; 904 NW2d 875 (2017). However, the mere fact that discovery is incomplete "does not automatically mean that the trial court's decision to grant summary disposition was untimely or otherwise inappropriate." *Marilyn Froling Revocable Living Trust v Bloomfield Hills Country Club*, 283 Mich App 264, 292; 769 NW2d 234 (2009).

> The question is whether further discovery stands a fair chance of uncovering factual support for the opposing party's position. In addition, a party opposing summary disposition cannot simply state that summary disposition is premature without identifying a disputed issue and supporting that issue with independent evidence. The party opposing summary disposition must offer the required MCR 2.116(H) affidavits, with the probable testimony to support is contentions. [*Id*. at 292-293.]

Defendants' present attorney submitted an affidavit under MCR 2.116(H)(1) in which he identified three areas requiring additional discovery: (1) Nation's authority to agree to retain KFC; (2) whether Kohn violated the standard of care of a licensed accountant, and (3) whether defendants agreed to pay the sum that KFC is seeking.

Relevant to Nation's authority, defendants' attorney attested that Nation's credibility was at issue and could only be meaningfully probed at a deposition during which she could be challenged with prior statements "as recorded in [defendants'] records," and that if deposed, Seidman and Stupay would testify that they never authorized Nation to agree to KFC's engagement

letter. The affiant did not identify what prior statements from defendants' records he would use to challenge Nation, leaving open the question whether the statements would be relevant to the instant litigation with KFC or would seek to rehash Nation's role in the federal lawsuits. Further, considering Nation's and Jackson's averments that they discussed hiring KFC with Seidman and Stupay, and Nation's statement that Seidman and Stupay authorized her to retain KFC, to pay its retainer, and to make a $10,000 interim payment, the affiant's expectation that Seidman and Stupay would testify contrarily appears to have no basis in fact. See *Estate of Trueblood v P&G Apartments, LLC*, 327 Mich App 275, 289; 933 NW2d 732 (2019) ("Speculation cannot create a question of fact.").

As to KFC's claim of account stated, the affiant stated that if deposed, Nation would testify that she did not receive invoices from KFC "during the time that she was employed by Atlas, and that she was only aware of a total account receivable to KFC of $15,748.75," Seidman and Stupay would testify that they did not authorize Nation to pay KFC more than $15,748.75, and Kohn would testify that he did not provide defendants with at least one invoice until June 13, 2018. Lastly, the affiant stated that if Jackson and Linkner were deposed, they would testify that they never signed KFC's engagement letter, and that they lacked the qualifications to determine whether Kohn violated the relevant standard of care.

There is no dispute that no one from Hooper Hathaway signed KFC's engagement letter, which is why the trial court found an implied-in-fact contract on the basis of the parties' conduct, not an express contract. That Jackson and Linkner may lack qualifications to determine whether Kohn operated in accord with the relevant standard of care does not detract from Jackson's attestation that Hooper Hathaway was satisfied with Kohn's work. As to KFC's account-stated claim, it is difficult to discern that Kohn would testify contrary to what KFC's records show, which is that KFC sent defendants an invoice dated February 23, 2018, and reflect a balance due of over $40,000. But even if Kohn did so testify, it would have no effect on KFC's claim for account stated. As we have already discussed, it is undisputed that defendants received multiple invoices after June 2018 and objected to none of them. Therefore, defendants are considered to have admitted the correctness of the sum due. See *Fisher Sand & Gravel*, 494 Mich at 558.

Regarding defendants' counterclaim of accounting malpractice, their attorney surmised that, if deposed, Kohn would testify that he did not undertake an "independent, objective analysis of the facts and circumstances underlying [defendants'] claims" against the Levines in the federal court litigations, and that he "had an unsatisfactory business relationship with Jesse Levine." He further surmised that, if deposed, Dennis Travis, one of the KFC employees who did work for defendants' federal cases, would testify about his qualifications. The affiant asserted that the testimony of Kohn and Travis pertained to whether Kohn's conduct fell below the relevant standard of care. But even if Kohn and Travis so testified, their testimonies would not support defendants' position that KFC committed accounting malpractice because, as already explained, KFC was entitled to witness immunity for his planned testimony and related evaluations. See *Maiden*, 461 Mich at 134.

Defendants have failed to show that additional discovery would have a fair chance of revealing facts that support their positions that Nation lacked authority to retain KFC on defendants' behalf, that Kohn committed accounting malpractice, or that defendants did not owe

the amount sought by KFC. Accordingly, defendants have not shown that summary disposition was premature. See *Marilyn Froling*, 283 Mich App at 292.

## F. FRIVOLOUS

Lastly, defendants argue that the trial court clearly erred by ruling that their counterclaim against KFC was frivolous. We disagree.

This Court reviews for clear error a trial court's finding that an action is frivolous. *Kitchen v Kitchen*, 465 Mich 654, 661; 641 NW2d 245 (2002). "A decision is clearly erroneous where, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made." *Id*. at 661-662. This Court reviews for an abuse of discretion a trial court's decision to dismiss a case. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006). An abuse of discretion occurs when a trial court's decision falls outside the range of principled outcomes. See *id*.

MCL 600.2591 provides in relevant part:

> (1) Upon motion of any party, if a court finds that a civil action or defense to a civil action was frivolous, the court that conducts the civil action shall award to the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party and their attorney.

> \* \* \*

> (3) As used in this section:

> (a) "Frivolous" means that at least 1 of the following conditions is met:

> (*i*) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.

> (*ii*) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.

> (*iii*) The party's legal position was devoid of arguable legal merit.

"A court must determine whether a claim or defense is frivolous on the basis of the circumstances at the time it was asserted." *Meisner Law Group PC v Weston Downs Condo Ass'n*, 321 Mich App 702, 732; 909 NW2d 890 (2017). A party's position, though erroneous, is not devoid of legal merit when the law at issue is unsettled or concerns a matter of first impression. See *Evans & Luptak, PLC v Lizza*, 251 Mich App 187, 203-204; 650 NW2d (2002); *Travelers Ins v U-Haul, Inc*, 235 Mich App 273, 290; 597 NW2d 235 (1999).

The legal underpinning for defendants' counterclaim was this Court's holding in *Voutsaras*, 326 Mich App at 670, that "licensed professionals owe the same duty to the party for whom they testify as they would to any client and that witness immunity is not a defense against

professional malpractice." Read in isolation, this holding could be interpreted as an attack on the common-law doctrine of witness immunity, which the Michigan Supreme Court explained in *Maiden*, 461 Mich at 134-135. However, as already discussed, this Court clearly indicated that at issue in *Voutsaras* were expert opinions intended for the estate's decedent or her attorneys "*in addition* to intended expert testimony for the court." *Id*. at 675. This Court acknowledged the applicability of the settled common-law doctrine of witness immunity by stating that, to the extent that the plaintiff's malpractice claim arose from the defendants' "having provided damaging testimony or evidence intended for consideration by the trial court, [the defendants were] clearly protected by the doctrine of witness immunity."[7] *Id*. The present defendants' argument from *Voutsaras* appears to be less an attempt to argue for "the extension, modification, or reversal of existing law," MCR 1.109(E)(b), than an exercise in the selective citation and artful interpretation of this Court's opinion to support a position contrary to that taken by this Court. See *id*.

In addition, it is not entirely clear that, at the time defendants asserted their counterclaim against KFC, they had conducted a "reasonable inquiry" into whether KFC had, in fact, committed malpractice. MCR 1.109(E)(b). Defendants derived the factual allegations relevant to their counterclaim from Hoebeke's rebuttal of KFC's Preliminary Independent Rebuttal Expert Report. Hoebeke wrote his rebuttal to affirm that nothing in KFC's report changed or altered the opinions that he had expressed in his expert report. Although he faults Kohn for failing to conduct an independent analysis of the federal lawsuits' claims against the Levines, and repeatedly opines that there is no basis for Kohn's various opinions, nowhere does Hoebeke allege that Kohn was professionally negligent. The overwhelming majority of Hoebeke's criticisms of Kohn's report arise from differences between his and KFC's scopes of engagement. Kohn was tasked with determining damages arising from the claims alleged against the Levines in the federal lawsuits, whereas Hoebeke was tasked with justifying the financial transactions that were the basis for the claims. Nowhere in Hoebeke's report does he suggest that Kohn negligently performed the task that he was actually given. Although attestations by Nation and Jackson that they were satisfied with KFC's work do not establish that KFC performed in accordance with any relevant standard of care, they arguably express defendants' and Hooper Hathaway's recognition that KFC did what it was asked to do. If KFC did what defendants asked it to do in 2017, there seems no factual basis to claim in 2019 that KFC committed malpractice for not doing more than it was asked to do.

Lastly, there is no basis in fact for defendants' assertion in the countercomplaint that KFC was the direct and proximate cause for $2.7 million in damages. Michigan abolished joint and several liability and replaced it with "fair share liability where each tortfeasor only pays the portion of the total damages award that reflects that tortfeasor's percentage of fault." *Estate of Goodwin v Northwest Mich Fair Ass'n*, 325 Mich App 129, 138; 923 NW2d 894 (2018) (quotation marks and citation omitted). Thus, the liability for damages is several only, not joint. *Id*. at 139 (citation omitted).

---

[7] As in the present case, the *Voutsaras* defendants did not actually testify, since the cause of action underlying *Voutsaras* was dismissed against Voutsaras at the summary disposition stage. *Voutsaras*, 326 Mich App at 670.

In the present case, defendants essentially requested that same amount of damages from KFC as it did from Hooper Hathaway in the claim alleging legal malpractice. However, defendants failed to identify the portion of the $2.7 million attributed to KFC's percentage of fault, as opposed to the acts of other tortfeasors, i.e., Hooper Hathaway. There was simply no basis stated in fact or law for defendants to seek $2.7 million in damages from KFC.

We agree with the trial court that defendants' counterclaim was not sufficiently grounded in law. It relied on a contrived reading of *Voutsaras*, the relevant facts of which were different from those presented here and which merely restated settled law governing witness immunity. In addition, defendants' counterclaim arguably was not grounded in fact or the product of a reasonable inquiry, as it arose from allegations derived from a rebuttal report that did not address accounting malpractice and did not assess the actual work that KFC had been asked to do. Further, given defendants' limitations on KFC's scope of engagement in 2017, and the evidence that KFC did what Hooper Hathaway and defendants asked it to do, defendants' insinuation that KFC committed malpractice by not doing more or something different has no basis in fact. For these reasons, defendants' counterclaim was devoid of legal merit, MCL 600.2591(3)(*iii*). In addition, the absence of any factual or legal basis to seek $2.7 million in damages from KFC gives rise to a reasonable inference that defendants' primary purpose in bringing the counterclaim was to "harass, embarrass, or injury" KFC and Kohn. MCL 600.2591(3)(*i*). Because the evidence establishes that at least one of the conditions identified in MCL 600.2519(3) existed at the time defendants filed their counterclaim, the trial court did not clearly err by concluding that defendants' counterclaim against KFC was frivolous.

Affirmed. KFC, as the prevailing party, may tax costs.


/s/ Elizabeth L. Gleicher
/s/ Deborah A. Servitto
/s/ Anica Letica