# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF DIANA LYKOS VOUTSARAS, by
KATHLEEN M. GAYDOS, Personal
Representative,

        Plaintiff-Appellant,

and

SPIRO VOUTSARAS,

        Plaintiff,

v

GARY L. BENDER, RICHARD A.
CASCARILLA, LINDSAY NICOLE DANGL,
VINCENT P. SPAGNUOLO, and MURPHY &
SPAGNUOLO P.C.,

        Defendants,

and

KENNETH M. MOGILL, MOGILL POSNER &
COHEN, KERN G. SLUCTER and GANNON
GROUP, P.C.,

        Defendant-Appellees.

FOR PUBLICATION
January 3, 2019
9:05 a.m.

No. 340714
Ingham Circuit Court
LC No. 16-000263-NM

Before: SWARTZLE, P.J., and SAWYER and RONAYNE KRAUSE, JJ.

RONAYNE KRAUSE, J.

    Plaintiff, the Estate of Diana Lykos Voutsaras ("Estate") appeals as of right the trial court's order granting summary disposition in favor of defendants Kenneth M. Mogill, Mogill

-1-

Posner & Cohen, Kern G. Slucter, and Gannon Group P.C., ("Mogill defendants").[1]  This appeal arises in relevant part out of the Estate's action against the Mogill defendants for professional malpractice in their services as expert witnesses.  The trial court held that a party's own expert witnesses, regardless of any duty to their client, are shielded by witness immunity.  We hold that licensed professionals owe the same duty to the party for whom they testify as they would to any client, and witness immunity is not a defense against professional malpractice.  Therefore, we reverse and remand.

## I. STATEMENT OF FACTS

The underlying litigation involved the foreclosure of a commercial mortgage and note made by Diana and Spiro Voutsaras and held by Gallagher Investments ("Gallagher").  The Voutsarases hired the law firm defendants[2] to represent them in the foreclosure proceedings. The Voutsarases, on the advice of the law firm defendants, filed a counterclaim against Gallagher and a third party claim against some of the principal actors involved with Gallagher for malpractice.  The law firm defendants then hired the Mogill defendants to provide litigation support and ultimately serve as expert witnesses at trial.  Kenneth Mogill was considered to be a preeminent authority on legal ethics in the state of Michigan, and Slucter and Gannon Group were experts in the field of real estate brokerage and best practices in the field.  Ultimately the law firm defendants informed the Voutsarases that their litigation strategy was bound to fail and the trial court granted summary disposition against the Voutsarases.

Diana Voutsaras passed away in January of 2015, and the Estate then brought the present action against the law firm defendants and the Mogill defendants.  The Estate claimed that the law firm defendants failed to advise it of a favorable settlement offer and that the law firm defendants deliberately concealed the fact that the Estate's claims were frivolous in order to drive up their costs prior to trial.  The Estate claimed that the Mogill defendants breached their duty to the estate by failing to properly investigate the facts required to formulate their opinions, failing to understand the applicable standards, and failing to provide a competent professional opinion.  Noting that the ability to sue one's own expert witnesses was an issue of first impression in Michigan, the trial court engaged in a broad reading of prior witness immunity standards and granted summary judgment to the Mogill defendants on that theory.  This appeal followed.

## II. PRESERVATION AND STANDARD OF REVIEW

### A. PRESERVATION OF THE ISSUE

---

[1] On October 2, 2017, Ingham Circuit Court Judge Matthew J. Stewart entered a stipulated order of dismissal following a settlement agreement between plaintiff Kathleen Gaydos, as the personal representative of the estate of Diana Voutsaras, and defendants Gary Bender, Richard Cascarilla, Lindsay Dangle, Vincent Spagnuolo and Murphy & Spagnuolo P.C. (collectively "the law firm defendants"), who were Diana and Spiro Voutsaras' attorneys in the underlying litigation.

[2] See footnote 1.

An issue is preserved for appellate review if raised in the trial court and pursued on appeal. *Peterman v Dep't of Natural Resources*, 446 Mich 177, 183; 521 NW2d 499 (1994). Plaintiff argued that whether a party may sue his or her own expert witness was an issue of first impression in Michigan and that the trial court should follow caselaw from sister state courts on that matter. The trial court agreed that this issue was an open question in Michigan but determined that defendant Mogill was entitled to witness immunity because that doctrine is broadly construed and because the policy considerations underlying the doctrine would be advanced by its application in this case. The issue is preserved.

## B. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision to grant summary disposition. *Bowden v Gannaway*, 310 Mich App 499, 503; 871 NW2d 893 (2015). A court may grant summary disposition under MCR 2.116(C)(7) "because of . . . immunity granted by law . . ." "A party may support a motion under MCR 2.116(C)(7) by affidavits, depositions, admissions, or other documentary evidence." *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). This Court also reviews de novo the applicability of legal doctrines, *Husted v Auto-Owners Ins Co*, 213 Mich App 547, 555; 540 NW2d 743 (1995), aff'd 459 Mich 500 (1999), and claims of immunity, *Denhof v Challa*, 311 Mich App 499, 510; 876 NW2d 266 (2015).

## III. ARGUMENT

### A. DUTY OF AN EXPERT WITNESS WHO IS A LICENSED PROFESSIONAL

Plaintiff claims that defendants owed to it a legal duty and that they breached that duty. Duty is "the legal obligation to conform to a specific standard of conduct in order to protect others from unreasonable risks of injury." *Lelito v Monroe*, 273 Mich App 416, 419; 729 NW2d 564 (2006). As will be discussed further, our decision in this matter is limited to a claim of professional malpractice, which "arises from the breach of a duty owed by one rendering professional services to a person who has contracted for those services … predicated on the failure of the defendant to exercise the requisite professional skill." *Broz v Plante & Moran, PLLC*, ___ Mich App ___, ___; ___ NW2d ___ (2018) (Docket No. 340381, slip op at p 4). "Generally, to state a claim for malpractice, a plaintiff must allege (1) the existence of a professional relationship, (2) negligence in the performance of the duties within that relationship, (3) proximate cause, and (4) the fact and extent of the client's injury." *Id*. at ___ (slip op at p 5).

The trial court granted summary disposition to defendants based solely on witness immunity. Defendants now argue on appeal that, regardless of witness immunity, plaintiff has failed to show that defendants owed a legal duty to plaintiff. "An issue not addressed by the trial court may nevertheless be addressed by the appellate court if it concerns a legal issue and the facts necessary for its resolution have been presented." *Sutton v City of Oak Park*, 251 Mich App 345, 349; 650 NW2d 404 (2002). We are not satisfied that this record presents us with the facts necessary to resolve this issue. Nevertheless, we presume for the sake of argument that defendants are subject to claims for professional malpractice by plaintiff and breached their professional duties to plaintiff. However, we do not decide those questions, and we leave for the trial court to determine in the first instance whether, in fact, defendants owed or breached a legal

duty to plaintiff. We address only whether defendants are immune from liability related to that duty, if any.

## B. WITNESS IMMUNITY AS A DEFENSE TO MALPRACTICE

### 1. MICHIGAN CASE LAW

Defendants and the trial court rely on our Supreme Court's opinion in *Maiden*, 461 Mich at 109, for the proposition that all witnesses enjoy total immunity for any relevant testimony provided during judicial proceedings. Our Supreme Court observed that "the duty imposed on a witness is generally owed to the court, not the adverse party," so a breach of that duty "does not give rise to a cause of action in tort by the adverse party." *Id*. at 133-134. Our Supreme Court continued:

> [W]itnesses who testify during the course of judicial proceedings enjoy quasi-judicial immunity. This immunity is available to those serving in a quasi-judicial adjudicative capacity as well as "those persons other than judges without whom the judicial process could not function." 14 West Group's Michigan Practice, Torts, § 9:393, p. 9–131. Witnesses who are an integral part of the judicial process "are wholly immune from liability for the consequences of their testimony or related evaluations." *Id*., § 9:394, pp. 9-131 to 9-132, citing *Martin v Children's Aid Society*, 215 Mich App 88, 96; 544 NW2d 651 (1996). Statements made during the course of judicial proceedings are absolutely privileged, provided they are relevant, material, or pertinent to the issue being tried. See *Martin v Children's Aid Society, supra*; *Rouch v Enquirer & News*, 427 Mich 157, 164; 398 NW2d 245 (1986); *Meyer v Hubbell*, 117 Mich App 699, 709; 324 NW2d 139 (1982); *Sanders v Leeson Air Conditioning Corp*, 362 Mich 692, 695; 108 NW2d 761 (1961). Falsity or malice on the part of the witness does not abrogate the privilege. *Sanders, supra*. The privilege should be liberally construed so that participants in judicial proceedings are free to express themselves without fear of retaliation. *Id*. [*Maiden*, 461 Mich at 134.]

We find *Maiden* only partially applicable, for several reasons.

First, the policy considerations in *Maiden* were clearly focused on the freedom witnesses must have to give *damaging* testimony without any fear of possible reprisal. We agree with defendants and the trial court to the extent that such policy considerations extend beyond witnesses who are formally or functionally adverse. In other words, any witness called by any party enjoys immunity based on the substance of that witness's testimony or evidence. Therefore, to the extent plaintiff may assert that the Mogill defendants gave testimony that was *unfavorable* to plaintiff, such assertions unambiguously run afoul of the witness immunity doctrine in Michigan. However, whether witness immunity protects the Mogill defendants from giving *professionally incompetent* testimony, which might or might not be favorable, was clearly not a matter considered by the *Maiden* court. As our Supreme Court recently explained, to derive a rule law from the facts of a case "when the question was not raised and no legal ruling on it was rendered, is to build a syllogism upon a conjecture." *People v Seewald*, 499 Mich 111, 121 n 26; 879 NW2d 237 (2016).

-4-

Additionally, the witness immunity doctrine at issue in *Maiden* addresses only actual testimony. That immunity necessarily extends to any other materials or evidence prepared by the witness for the intended benefit of the court. See *Denhof v Challa*, 311 Mich App 499, 511-520; 876 NW2d 266 (2015). Nevertheless, plaintiff's complaint appears to allege that the Mogill defendants provided expert opinions for the benefit of plaintiff or plaintiff's attorneys, *in addition to* intended expert testimony for the court. Furthermore, plaintiff alleges that the Mogill defendants not only provided incompetent opinions, but failed to undertake reasonable skill and care in forming those opinions. As discussed, we have already established that the Mogill defendants owed plaintiff a duty of professional care; plaintiff essentially alleges a perfectly ordinary claim of legal malpractice, asserting that the Mogill defendants breached that duty of professional care.

To the extent plaintiff's claims rest on the Mogill defendants having provided damaging testimony or evidence intended for consideration by the trial court, the Mogill defendants are clearly protected by the doctrine of witness immunity. However, we find nothing in *Maiden*, or any other Michigan case law, suggesting that any other claim of professional malpractice by a client is precluded merely because the professional was expected to provide expert testimony. We decline to parse which particular claims in this matter are immunized. We hold only that the Mogill defendants are not absolutely immunized from professional malpractice claims where they already owed a duty of professional care, merely because part of their retention included the provision of expert testimony.

## 2. OTHER JURISDICTIONS

Although not binding, authority from other jurisdictions may be considered for its persuasive value. *Abela v Gen Motors Corp,* 469 Mich 603, 607; 677 NW2d 325 (2004). We have considered the extra jurisdictional case law provided to us by the parties, and we find, on balance, that the most persuasive precedent supports our conclusion above.

In *Briscoe v LaHue*, 460 US 325; 103 S Ct 1108; 75 L Ed 2d 96 (1983), the United States Supreme Court, which is obviously binding on this Court, held that the common law standard of witness immunity was not abridged by federal law, and therefore a police officer could not be held liable for perjured testimony given during the plaintiff's trial. The Court proceeded to lay out the policy reasons behind witness immunity, holding: "A witness's apprehension of subsequent damages liability might induce two forms of self-censorship. First, witnesses might be reluctant to come forward to testify. And once a witness is on the stand, his testimony might be distorted by the fear of subsequent liability." *Id*. at 333 (citations omitted). The Court explained that "the truth-finding process is served if the witness's testimony is submitted to 'the crucible of the judicial process so that the factfinder may consider it, after cross-examination, together with the other evidence in the case to determine where the truth lies.'" *Id*. at 333-334, quoting *Imbler v Pachtman*, 424 US 409, 440; 96 S Ct 984; 47 L Ed 2d 128 (1976) (WHITE, J., concurring in judgment). This case merely reaffirms that a witness must be immune to the consequences of providing damaging testimony, which in turn must extend to a party's own witnesses.

In *Mattco Forge, Inc* v *Arthur Young & Co*, 5 Cal App 4th 392; 6 Cal Rptr 2d 781 (1992), the California Court of Appeals held that California's "litigation privilege" statute[3] did not bar a party from bringing suit against its own expert. In that case, the plaintiff (Mattco) engaged the defendant (Arthur Young) "to perform litigation support accounting work" in the underlying action. *Id*. at 395. After the dismissal of that suit, Mattco brought suit against Young alleging (in part) professional malpractice, negligence, and breach of contract. *Id*. at 396. The California Court of Appeals determined that the policy considerations behind the litigation privilege, freedom of access to courts and the encouragement of truthful testimony, would best be served by allowing malpractice proceedings against expert witnesses:

> Arthur Young was not a "neutral expert," but one hired by Mattco. If an expert witness's negligence and breach of contract cause dismissal of the party who hired that expert witness, that does not expand freedom of access to the courts. Applying the privilege in this circumstance does not encourage witnesses to testify truthfully; indeed, by shielding a negligent expert witness from liability, it has the opposite effect. Applying the privilege where the underlying suit never reached the trial stage would also mean that the party hiring the expert witness would have to bear the penalty for the expert witness's negligence. That result would scarcely encourage the future presentation of truthful testimony by that witness to the trier of fact. [*Id*. at 404.]

The California Court of Appeals found the distinction between one's own witnesses and adversarial witnesses to be of unique importance, because the policies underlying witness immunity "can logically apply . . . only to trial testimony of adverse witnesses," and thus were immaterial to "a pretrial dispute between a party and its own expert witness that arose during discovery." *Id.* at 406.

In *Murphy v AA Mathews, Div Of CRS Group Engineers, Inc*, 841 SW2d 671 (Mo, 1992), the defendant engineering firm was retained by a subcontractor to prepare claims for additional compensation. The firm testified at arbitration and the subcontractor was awarded substantially less than what it was seeking. *Id*. The subcontractor then filed suit against the engineering firm, alleging that it "was negligent in its performance of professional services involving the preparation and documentation of [the subcontractor's] claims for additional compensation . . ." *Id*. The Missouri Supreme Court observed that witness immunity decisions generally entailed statements made "directly in the judicial proceeding itself or in an affidavit or pleading, and all of the statements were made by adverse witnesses or parties." *Id*. It concluded that witness immunity was not properly applied "to bar a suit against a privately retained professional who negligently provides litigation support services." *Id*. The Court reasoned that the policies

_____

[3] That statute provided in part: " 'A privileged publication or broadcast is one made: . . . In any (1) legislative or (2) judicial proceeding, or (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to Chapter 2 . . . ' " *Mattco Forge, Inc*, 5 Cal App 4th at 402, quoting Cal Civ Code § 47(b).

underlying witness immunity would not be served by protecting "professionals selling their expert services rather than as an unbiased court servant." *Id*. at 681. Furthermore, subjecting professionals to liability for negligence would encourage skill, care, and prudence; and would discourage "extreme and ridiculous positions in favor of their clients in order to avoid a suit by them." *Id*. The Court also emphasized the role expert witnesses play in case preparation, providing advice and advocacy, and even playing as much of "a role in the organization and shaping and evaluation of their client's case as do the lawyers." *Id*. at 682. It therefore permitted the action against the engineering firm.

In *LLMD of Mich, Inc v Jackson-Cross Co*, 559 PA 297; 740 A2d 186 (1999), the plaintiffs hired an accounting firm in the underlying action to calculate their lost profits. At trial, a critical mathematical error in the firm's calculations was revealed during cross-examination of the firm's chairman. *Id*. at 299. The chairman had not personally prepared the lost profits calculation and could not explain the error. *Id*. The trial court granted a motion to strike the chairman's testimony. The next day, the plaintiffs accepted a settlement offer for $750,000; the firm later recalculated the lost profits at $2.7 million. *Id*. The plaintiffs then sued the firm for breach of contract and professional malpractice. *Id*. at 300. The Pennsylvania Supreme Court held that witness immunity did not bar the action, but emphasized that it did so because the gravamen of the action was negligence in formulating the expert opinion, rather than dissatisfaction with the substance of the opinion. *Id*. at 304-307. In particular, "[a]n expert witness must be able to articulate the basis for his or her opinion without fear that a verdict unfavorable to the client will result in litigation." *Id*. at 306. However, "immunizing an expert witness from his or her negligence in formulating that opinion" would not serve the purposes behind witness immunity." *Id*. Rather, "[t]he judicial process will be enhanced only by requiring that an expert witness render services to the degree of care, skill and proficiency commonly exercised by the ordinarily skillful, careful and prudent members of their profession." *Id*. at 307. Thus, the court held that the accounting firm was not entitled to witness immunity. *Id*.

The Connecticut Superior Court (i.e. a trial court) followed *LLMD of Mich, Inc* in *Pollock v Panjabi*, 47 Conn Supp 179; 781 A2d 518 (2000). In *Pollock*, the plaintiffs retained a spinal biomechanics expert to perform experiments relating to the underlying personal injury action. *Id*. at 180. After pretrial voir dire of the expert, the trial court ruled that the expert's opinion was not credible and was not admissible at trial. *Id*. at 182. The trial court granted numerous continuances so that the expert could perform additional experiments, but the expert repeatedly failed to follow the conditions set forth by the trial court. *Id*. at 182-183. Ultimately, the plaintiffs brought suit against the expert and a kinesiologist hired by the expert alleging (in part) breach of contract and negligence. *Id*. at 183. The Connecticut Superior Court held that the defendants were not entitled to invoke witness immunity, determining that the

> policy reasons undergirding the absolute privilege accorded witnesses are not implicated here. This is not a case in which the right of a witness to speak freely, in or out of court, is involved. While conduct, objects and experiments may have communicative aspects; the plaintiffs do not complain about what [the spinal biomechanics expert] said or about anything [the kinesiologist], who never testified, said or communicated. Rather, the plaintiffs complain of the defendants' failure to perform work, as agreed upon, according to scientific principles as to which there are no competing schools of thought. [*Id*. at 188.]

The Court concluded that the gravamen of the plaintiffs' claim was to "hold the defendants accountable for not doing what they agreed to do," which did not undermine the witness immunity policy of ensuring that witnesses could speak freely. *Pollock*, 47 Conn Supp at 193-194.

We find the above cases to be the most persuasive. However, additional state courts have allowed a party to sue its own expert, determining that the policy considerations underlying the doctrine of witness immunity would not be furthered by application in those cases. See *Boyes-Bogie v Horvitz*, 14 Mass L Rptr 208 (Mass Super, 2001) (holding that witness immunity does not bar action against a friendly expert who was negligent in valuing a martial asset); *Marrogi v Howard*, 805 So 2d 1118 (La, 2002) (holding, in a case where the friendly expert made numerous errors in estimating the plaintiff's billings and summary judgment was granted based on the expert's deposition testimony, that "claims in connection with a retained expert's alleged failure to provide competent litigation support services are not barred by the doctrine of witness immunity"); *Hoskins v Metzger*, 102 So 3d 752 (Fla App, 2012) (holding that it was erroneous for the trial court to dismiss an action against a friendly expert on the basis of witness immunity when the plaintiffs were alleging that they lost at trial because of the expert's appearance at trial and "his inadequate testimony").

### 3. WITNESS IMMUNITY AS A DEFENSE AGAINST MALPRACTICE

It bears repeating that the *Maiden* Court prefaced its discussion of witness immunity by ruling that the medical examiner was an adverse witness to the plaintiff. *Maiden*, 461 Mich at 133. Witness immunity protects all witnesses, including experts retained by a party, from suit for testimony or evidence premised on the damaging nature thereof. However, we note that a common theme in the cases discussed above was whether to *extend* witness immunity to ordinary professional malpractice claims. We find no Michigan law suggesting that witness immunity already precludes a claim by a client against a retained professional for the negligent performance of professional services. We are persuaded by the reasoning in the above cases that witness immunity should not be further extended. Where a duty of professional care exists such that a malpractice action may be maintained, witness immunity is not a defense to a malpractice action except, as noted, insofar as the action is premised on the substance of the professional's evidence or testimony intended to be provided to the court.

### IV. CONCLUSION

We conclude that the trial court erred by construing the doctrine of witness immunity too broadly. A professional's client is not precluded from maintaining a professional malpractice action by witness immunity, except to the extent the action is premised on the substance of evidence or testimony prepared for the benefit of the court. We decline to address any other issues, such as the specific duties owed in this matter or the extent to which plaintiff's specific allegations actually implicate witness immunity. We reverse the trial court's grant of summary

disposition pursuant to MCR 2.116(C)(7), and we remand for further proceedings. We do not retain jurisdiction. An important public question of first impression being involved, we direct that the parties shall bear their own costs. MCR 7.219(A).

/s/ Amy Ronayne Krause
/s/ Brock A. Swartzle
/s/ David H. Sawyer