*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BRIAN WHITE,

      Plaintiff-Appellee,

v

FLOOR SAVERS MAINTENANCE &
RESTORATION INC,

      Defendant-Appellant,

and

MARC MUNYAN,

      Defendant-Appellant

UNPUBLISHED
September 5, 2024

No. 363976
Macomb Circuit Court
LC No. 22-001102-CB

Before: MARKEY, P.J., and SWARTZLE and MARIANI, JJ.

PER CURIAM.

Defendants Floor Savers Maintenance & Restoration Inc (Floor Savers) and Marc Munyan moved for summary disposition of plaintiff Brian White's claims under MCR 2.116(C)(7) and (C)(8). The trial court rejected defendants' arguments that the claims were time barred by the statute of limitations and that Munyan was entitled to quasi-judicial immunity. We affirm in part and reverse in part.

## I. FACTUAL BACKGROUND

According to White's first amended complaint, Munyan is the owner of Floor Savers. White was employed as Floor Savers' chief financial officer from 2014 until his resignation in May 2018. In September 2018, Munyan submitted an allegedly fraudulent insurance claim with EMC Insurance, stating that White and another former Floor Savers employee embezzled approximately $90,000 from the company during their employment. Munyan submitted numerous documents to EMC Insurance along with his claim, which White alleges were also falsified. On September 25, 2018, after EMC Insurance notified Munyan that a police report was required for

-1-

his insurance claim, Munyan filed a police report with the Madison Heights Police Department (MHPD). White alleges that the police report was also false and that Munyan submitted with the report the same allegedly false documents he had submitted with his insurance claim. Munyan ultimately settled his claim with EMC Insurance in December 2018 for $25,000.

In January 2019, the Oakland County Prosecutor's Office (OCPO) charged White with one count of felony embezzlement of more than $1,000 but less than $20,000, based on the allegations in Munyan's police report. Generally, Munyan claimed that White charged $1,800 of personal expenses on Floor Savers' credit card. White claims that Munyan authorized the use of the credit card for personal expenses and that White paid the company back through payroll deductions. In July 2019, the district court presiding over the criminal proceedings against White issued an order compelling Munyan to produce Floor Savers' business records, including credit card records, accounting software records, and payroll software records. Munyan did not comply and in late 2019, the embezzlement charge against White was dismissed without prejudice.

In January 2020, OCPO reauthorized the embezzlement charge against White and the district court continued its previous order compelling Munyan to produce Floor Savers' business and accounting records. Munyan did not comply with the district court's order until August 2020, at which point White engaged an expert to review the business records produced by Munyan. The expert concluded that Munyan's document production was incomplete and the matter was brought for a hearing before the district court, which granted Munyan an additional 30 days to comply with the court's order.

After Munyan produced additional records in November 2020, White's expert concluded that the records were significantly altered—by approximately $2 million—from the records Munyan produced in August 2020, which was indicative of "significant tax fraud" by Munyan. The expert also opined that Munyan still had not fully complied with the district court's order because he had failed to produce accountant copies of Floor Savers' business records, which would contain an audit trail that logs any edits or revisions made to the records.

The district court held a preliminary examination on February 24 and March 21, 2021. Munyan, White's expert, and a MHPD officer testified at the hearing. Ultimately, the district court found probable cause to support the embezzlement charge and White was bound over to the circuit court. In November 2021, the circuit court issued an order compelling Munyan to produce all records in accordance with the district court's previous order, as well as accountant copies of the records he had already produced. Munyan did not comply and the charge against White was dismissed on December 8, 2021.

According to White, during the pendency of the criminal proceedings, Munyan stalked and harassed him by following him to his job and his home. White further alleged that Munyan also purposefully informed White's employers and prospective employers of the criminal charge against him, which ultimately resulted in White being terminated from or denied employment.

## II. PROCEDURAL HISTORY

White filed his initial civil complaint against defendants on March 17, 2022 and his first amended complaint on July 5, 2022. The first amended complaint brought four counts.

In Count I, an intentional infliction of emotional distress (IIED) claim, White alleged that he suffered severe emotional distress as a result of Munyan's "intentional filing of a false police report and his continued harassment of [White]." In Count II, an intentional interference with contractual relations (IICR) claim, White alleged that Munyan had actual and/or implied knowledge of White's existing and prospective business expectancies relative to his employment and that Munyan intentionally disseminated false and misleading information with the intention of disrupting and destroying White's business relations. Count III, a gross negligence claim, alleged that Munyan was grossly negligent in disseminating false and misleading information about White and that, as a result, White suffered injuries "including, but not limited to, money damages associated with having to prove his innocence, and the hiring of a private investigator, attorney, and forensic accountants, to clear his name, as well as shock, and emotional distress." And in Count IV, a claim for "stalking pursuant to MCL 600.2954," White alleged that Munyan engaged in stalking and harassment and that White is a victim who suffered damages, as those terms are defined by MCL 750.411h(1).

Defendants moved for summary disposition pursuant to MCR 2.116(C)(7) and (8). Defendants argued that White's claims were time barred by the three-year statute of limitations set forth in MCR 600.5805(2) because all of the claims stemmed from the filing of the allegedly false police report in September 2018. Defendants also argued that Munyan was entitled to quasi-judicial immunity because White's claims were based solely on the fact that Munyan filed an allegedly false police report and the fact that Munyan testified at the preliminary examination. The trial court denied the motion, rejecting defendants' argument that all of the claims stemmed from the filing of the police report in September 2018. The trial court pointed to White's allegations that Munyan altered business records in August and November 2020 and engaged in stalking, harassment, and interference with White's business relationships throughout the period when the criminal proceedings were pending. The trial court also rejected Munyan's argument that he was entitled to quasi-judicial immunity, finding that Munyan failed to point to any authority which holds that immunity could be based on the production of evidence during a criminal proceeding. Defendants then filed an application for leave to appeal, which this Court granted.[1]

## III. STANDARD OF REVIEW

Summary disposition is warranted under MCR 2.116(C)(7) where "[e]ntry of judgment, dismissal of action, or other relief is appropriate because of . . . immunity granted by law [or] statute of limitations . . . ." This Court reviews the denial of summary disposition de novo to determine whether the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). A party may support a motion under MCR 2.116(C)(7) with affidavits, depositions, admissions, or other documentary evidence, but supporting materials are not required by either party. *Id*. at 119. The contents of the complaint are accepted as true unless contradicted by documentation submitted by the movant. *Id*.

---

[1] *White v Floor Savers Maintenance & Restoration, Inc*, unpublished order of the Court of Appeals, entered on May 10, 2023 (Docket No. 363976).

## IV. QUASI-JUDICIAL IMMUNITY

The trial court erred by failing to recognize that White's claims are partially barred by the doctrine of quasi-judicial immunity. Quasi-judicial immunity[2] "as developed by the common law has at least two somewhat distinct branches." *Denhof v Challa*, 311 Mich App 499, 511; 876 NW2d 266 (2015). The first branch "focuses on the nature of the job-related duties, roles, or functions of the person claiming immunity." *Id*. This branch is "an extension of absolute judicial immunity to non-judicial officers." *Serven v Health Quest Chiropractic, Inc*, 319 Mich App 245, 253-254; 900 NW2d 671 (2017) (referring to absolute judicial immunity as the "doctrinal sire of quasi-judicial immunity"). It is "available to those serving in a quasi-judicial adjudicative capacity as well as those persons other than judges without whom the judicial process could not function." *Id*., quoting *Maiden*, 461 Mich at 134 (quotations marks and citations omitted). Under this branch, Michigan courts have accorded quasi-judicial immunity to individuals in a variety of roles, including non-judicial officers who serve a factfinding function, and those who operate as an "arm of the court" in judicial proceedings. See, e.g., *Serven*, 319 Mich App at 257 (explaining that members of chiropractic disciplinary subcommittee acted as judges and therefore were entitled to quasi-judicial immunity from chiropractor's claims); *Diehl v Danuloff*, 242 Mich App 120, 133; 618 NW2d 83 (2000) (extending quasi-judicial immunity to psychologists appointed by the court to perform custody evaluations because allegations against the psychologist were related to his role in the custody proceeding in which he "served as an arm of the court and performed a function integral to the judicial process"); *Martin v Children's Aid Soc*, 215 Mich App 88, 97; 544 NW2d 651 (1996) (extending quasi-judicial immunity to social workers who initiate and monitor child placement proceedings). With regard to witnesses, our Supreme Court has said that witnesses who are "an integral part of the judicial process" are immune "from liability for the consequences of their testimony or related evaluations." *Maiden*, 461 Mich at 134.

The second branch of quasi-judicial immunity "focuses on the fact that the person claiming immunity made statements or submissions in an underlying judicial proceeding." *Denhof*, 311 Mich App at 511. This branch, which is sometimes referred to as the "judicial proceedings privilege," is akin to the immunity from defamation applied to absolutely privileged communications. *Id*. See also *Burns v Reed*, 500 US 478, 501; 111 S Ct 1934; 114 L Ed 2d 547 (1991) (SCALIA, J., concurring in part and dissenting in part) (explaining that the absolutely privileged nature of in-court statements originally provided a defense to defamation only). It is well established that "statements made during the course of judicial proceedings . . . are absolutely privileged." *Couch v Schultz*, 193 Mich App 292, 294; 483 NW2d 684 (1992). And, "[a]n absolutely privileged communication is one for which no remedy is provided for damages in a defamation action because of the occasion on which the communication was made." *Id*. The privilege or immunity applies only to "[s]tatements made during the course of judicial proceedings . . . [which are] relevant, material, or pertinent to the issue being tried." *Maiden*, 461 Mich at 134 (citations omitted). "Judicial proceedings may include any hearing before a tribunal or administrative board that performs a judicial function." *Oesterle v Wallace*, 272 Mich App 260,

---

[2] Courts refer to the concept of immunity for action taken in a judicial proceeding by several names including quasi-judicial immunity, witness immunity, judicial proceedings privilege, and litigation privilege.

265; 725 NW2d 470 (2006) (quotation marks and citation omitted), citing *Couch*, 193 Mich App at 294. "[I]mmunity extends to every step in the proceeding and covers anything that may be said in relation to the matter at issue, including pleadings and affidavits." *Oesterle*, 272 Mich App at 265. "Falsity or malice on the part of the witness does not abrogate the privilege." *Maiden*, 461 Mich at 134. Michigan courts have expanded the privilege or immunity accorded to statements made during the course of judicial proceedings beyond defamation claims, applying it to actions for negligence, *Maiden*, 461 Mich at 117, intentional torts, *Dabkowski v Davis*, 364 Mich 429, 432-433; 111 NW2d 68 (1961), and tortious interference with a contractual or economic relationship, *Meyer v Hubbell*, 117 Mich App 699, 710-711; 324 NW2d 139 (1982).

Defendants argue that they are entitled to partial summary disposition "as to plaintiff's claims stemming from Mr. Munyan providing allegedly 'false' testimony and evidence during the criminal proceeding on the basis of immunity." Defendants do not argue on appeal that they are entitled to quasi-judicial immunity for White's IICR or stalking claims, and indeed, those claims are based on conduct independent of Munyan's participation in the criminal proceedings. Accordingly, the trial court correctly found that Counts II and IV survive summary disposition on this basis.

As to the remaining claims of IIED and gross negligence (Counts I and III, respectively), Munyan is, to some extent, entitled to quasi-judicial immunity. To start, Munyan is "wholly immune from liability for the consequences of [his] testimony[.]" *Maiden*, 461 Mich at 134; *Estate of Voutsaras by Gaydos v Bender*, 326 Mich App 667, 674-675; 929 NW2d 809 (2019). Thus, to the extent White's claims are based on Munyan's testimony at the preliminary examination—e.g., that Munyan's testimony caused White to suffer severe emotional distress or that Munyan was grossly negligent in his testimony—Munyan is entitled to quasi-judicial immunity. Further, Munyan is immune from the consequences of his testimony. *Maiden*, 461 Mich at 134. Munyan testified at the preliminary examination and, as a consequence of his (and others') testimony, probable cause was found to bind White over to the circuit court. There is no civil liability for that consequence, or any other such consequences that form the basis of White's claims.[3]

Likewise, there is no civil liability for statements Munyan made in his police report to MHPD. "[R]eports of crimes or of information about crimes to the police are absolutely privileged." *Eddington v Torrez*, 311 Mich App 198, 202; 874 NW2d 394 (2015) (collecting cases). The judicial proceedings privilege attaches even if the reporting party made the report maliciously. *Id.*, citing *Simpson v Burton*, 328 Mich 557, 562; 44 NW2d 178 (1950). This, for instance, means that Munyan is immune from White's IIED claim to the extent it alleges that White suffered severe emotional distress as a result of Munyan's "intentional filing of a false police report."

---

[3] Relatedly, to the extent White seeks to hold Munyan civilly liable for perjury or false testimony, there is no such cause of action. *Daoud v De Leau*, 455 Mich 181, 203; 565 NW2d 639 (1997) (no cause of action against defendants who perjured themselves in earlier probate court proceeding, causing the plaintiff to lose his parental rights).

The closer question is whether Munyan is immune from claims based on his alleged falsification of Floor Savers' business records, which he was ordered to produce during the criminal proceedings. Our Supreme Court's discussion of quasi-judicial immunity in *Maiden* provides a useful starting point. The relevant portion of *Maiden* deals with the consolidated case *Reno v Chung*. There, the plaintiff was charged with the murder of his daughter after a county medical examiner performed an autopsy and opined that the victim's wounds were inconsistent with the plaintiff's story regarding her death. *Maiden*, 461 Mich at 116. The medical examiner later testified against the plaintiff at the preliminary examination. *Id*. at 133. In preparation for trial, the prosecutor consulted with additional experts who found that the medical examiner's conclusions were "completely wrong," leading the prosecutor to drop the charges against the plaintiff. *Id*. at 117. The plaintiff then sued the medical examiner and others, alleging gross negligence. *Id*. The medical examiner argued that the plaintiff failed to state a valid claim for gross negligence and that she was entitled to witness immunity. *Id*.

Our Supreme Court ultimately dismissed the plaintiff's gross negligence claim under MCR 2.116(C)(8) for failure to state a claim, finding that the medical examiner did not owe a legal duty to the plaintiff. *Id*. at 133, 135. The Court explained that the medical examiner's duties were delineated by statute, requiring the examiner to perform an investigation into the cause of death and requiring the examiner to testify. *Id*. at 132-133. With regard to immunity, the Court rejected the plaintiff's argument that the medical examiner's opinion was not a statement made in the course of the judicial proceedings, finding that the autopsy was "performed under statutory mandate and was a necessary predicate to [the medical examiner's] statutorily compelled testimony." *Id*. Thus, the medical examiner was entitled to immunity for conduct which she undertook relative to her role in aiding the judicial proceedings to function.

As this Court has subsequently explained, while "the witness-immunity doctrine at issue in *Maiden* addresses only actual testimony," testimony does not mark the outer limit of the doctrine's applicability. *Bender*, 326 Mich App at 675. This Court's decision in *Bender* helps to illustrate where the line is drawn. *Bender* stemmed from an underlying foreclosure proceeding in which the plaintiff's attorney hired the defendants to provide litigation support and ultimately serve as expert witnesses at trial testifying in favor of the plaintiff. *Id*. at 670. After the plaintiff lost the foreclosure proceeding, she sued the defendants, alleging they breached their duty to her by failing to properly investigate the facts required to formulate their opinion. The defendants argued that witness immunity barred the suit. *Id*. at 671.

This Court concluded that the defendant-expert-witnesses were entitled to immunity from some claims, but not from professional-malpractice claims. This Court held that, under *Maiden*, to the extent the plaintiff's claims were based on the fact that the expert witnesses gave testimony which was unfavorable to the plaintiff, those claims were unambiguously precluded by witness immunity. *Id*. at 674-675. This Court explained, however, that such "immunity necessarily extends to any other materials or evidence prepared by the witness for the intended benefit of the court" as well, and thus held that "[t]o the extent that the [plaintiff's] claims rest on the [expert witnesses] having provided damaging *testimony or evidence* intended for consideration by the trial court, the [expert witnesses] are clearly protected by the doctrine of witness immunity." *Id*. at 675 (emphasis added). This Court concluded that the plaintiff's claims for professional malpractice, however, were not barred by witness immunity, because those claims were based on breach of the

-6-

duty the defendants owed to the plaintiff rather than breach of their duty to the court as expert witnesses. *Id*. at 676.

*Silas v Reilly*, unpublished per curiam opinion of the Court of Appeals, issued on October 19, 2023 (Docket No. 363947), is also illustrative.[4] There, the plaintiffs brought suit against their children's former nanny and former therapist alleging that the defendants made false and defamatory statements to the children's guardian ad litem during the course of probate proceedings, which resulted in the termination of parental rights. *Id*. at 2. The trial court found that the defendants were entitled to quasi-judicial immunity, but a panel of this Court reversed. The panel explained that, in providing their statements to the guardian ad litem, the defendants "were not carrying out the job-related duties, roles, or functions of our judiciary," nor were they providing those statements "under oath or court order." *Id*. at 4. The "[d]efendants were under no obligation to speak with the guardian ad litem, and their statements were not submissions in the underlying judicial proceeding unless the guardian ad litem later introduced those statements as part of her investigation." *Id*. at p 4-5. Thus, the defendants were not entitled to quasi-judicial immunity "because [they] were neither performing a judicial function or making statements in an underlying judicial proceeding." *Id*. at p 5.

Based on the foregoing, we conclude Munyan is entitled to quasi-judicial immunity for White's claims based on the alleged falsification of business records to the extent the conduct was undertaken in accordance with Munyan's role as a witness who was ordered by the court to produce documents. For example, to the extent White's claims are based on the allegation that Munyan produced evidence which was false in response to the court's discovery order, that claim would be barred by witness immunity because the claim implicates Munyan's role as a participant in the judicial proceedings and is based on the violation of his duty to the court to respond to the court's order. Application of this conclusion to White's IIED claim renders that claim barred in part by immunity. And as White's counsel conceded at oral argument, application of this conclusion to White's gross negligence claim renders the entirety of that claim barred by immunity.

In sum, Munyan is not entitled to summary disposition on the basis of quasi-judicial immunity with respect to White's IICR and stalking claims, but is entitled to summary disposition on that basis with respect to White's gross negligence claim and, at least in part, his IIED claim.

## V. STATUTE OF LIMITATIONS

We also conclude that the trial court erred by failing to recognize that White's claims are partially barred by the applicable statute of limitations. In general, for actions to recover damages for injury to a person or property, the period of limitations is three years after the injury. MCL 600.5805(2). The limitations period runs from the time the claims accrues. MCL 600.5827. "[T]he claim accrues . . . when all of the elements of the cause of action have occurred and can be alleged in a proper complaint." *Sunrise Resort Assoc, Inc v Cheboygan Co Rd Comm*, 511 Mich 325, 336; 999 NW2d 423 (2023) (internal quotations omitted). "Accrual occurs when the wrong is done, meaning the moment when the plaintiff is harmed rather than when the defendant acted."

---

[4] While unpublished opinions are not binding, they may be considered as persuasive authority. *Paris Meadows, LLC v City of Kentwood*, 287 Mich App 136, 145 n 3; 783 NW2d 133 (2010).

*Id.* (quotations omitted). The Court "look[s] to plaintiff's complaint to determine when the wrong upon which the claim is based was done." *Fraser Twp v Haney*, 509 Mich 18, 24; 983 NW2d 309 (2022).

The parties do not dispute that MCL 600.5805(2)'s three-year limitations period applies to all of White's claims. White filed his initial complaint on March 17, 2022. Therefore, in order to comply with the applicable statute of limitations, White's claims must have accrued on or after March 17, 2019.

Defendants' argument that all of White's claims are time barred because they all stem from the filing of the police report is unpersuasive. Defendants fail to analyze White's claims on an individual basis and instead, erroneously, analyze the gravamen of White's claims collectively. See, e.g., *Kesti v Williams*, 4 NW3d 734, 735 (Mich, 2024) (finding that this Court erred "by analyzing the gravamen of the plaintiff's claims collectively" for purposes of determining when the plaintiff's claims accrued).

Looking at his claims on an individual basis, White's IIED claim is based on Munyan's alleged "conduct in the intentional filing of a false police report, and his continued harassment of" White. As discussed, this claim is barred in part by immunity; to the extent the claim is based on harm incurred prior to March 17, 2019, it is also time barred by the three-year statute of limitations. As to the IICR and stalking claims, White alleges that this conduct occurred "[d]uring the pendency of the fraudulent criminal charge against" him. The embezzlement charge was initially pending against White from approximately January 15, 2019 to "late 2019" and later pending again from January 2020 to December 2021. Therefore, to the extent those claims are based on harm incurred prior to March 17, 2019, they are time barred by the three-year statute of limitations.

## VI. CONCLUSION

The trial court erred by failing to recognize that White's claims are, at least in part, barred by quasi-judicial immunity and the statute of limitations. White's claims are barred by quasi-judicial immunity to the extent they are based on Munyan's filing of the police report, testimony at the preliminary examination, or production of documents or records pursuant to court order. Accordingly, Munyan is entitled to summary disposition on White's gross negligence claim and, to some extent, on White's IIED claim. Munyan is not entitled to immunity for White's IICR and stalking claims, but those claims, as well as his IIED claim, are time barred to the extent they are based on harm incurred prior to March 17, 2019.

We reverse in part, affirm in part, and remand for further proceedings consistent with this opinion.

/s/ Jane E. Markey
/s/ Brock A. Swartzle
/s/ Philip P. Mariani