*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

FARM BUREAU MUTUAL INSURANCE
COMPANY OF MICHIGAN, KELDON SCOTT,
and SANDRA SCOTT,

UNPUBLISHED
December 11, 2025
2:00 PM

Plaintiffs-Appellants,

v

No. 369571
Mecosta Circuit Court
LC No. 22-026205-CK

BLARNEY CASTLE OIL CO.,

Defendant-Appellee.

Before: M. J. KELLY, P.J., and REDFORD and FEENEY, JJ.

PER CURIAM.

Plaintiffs appeal as of right an opinion and order granting defendant's motion for summary disposition pursuant to MCR 2.116(C)(8) (failure to state a claim) and (C)(10) (no genuine issue of material fact) and dismissing plaintiffs' claims of negligence and breach of contract. We reverse the trial court's order granting defendant's motion, affirm denial of plaintiffs' request for summary disposition under MCR 2.116(I)(2), and remand for further proceedings.

Plaintiffs[1] own a summer home on Pretty Lake in Mecosta County. Plaintiffs heated their home with an oil-burning furnace fueled by an aboveground tank. Defendant delivered the heating oil to plaintiffs' tank under its "keep full" program. The program was based on an algorithm that determined plaintiffs' need based on their historic oil usage. In November 2018, defendant delivered oil. Defendant's driver, Brian Hoaglund, noticed a few irregularities as he pumped oil into the tank. Hoaglund observed that he could not lock the handle to fill the tank. Hoaglund had to hold the pump and slowly pump the oil into the tank. The tank was designed to release a whistle as the tank filled with oil and air left the tank; the absence of the whistle indicated that the tank was full. Hoaglund did not hear the whistle alarm as he filled the tank. The day after defendant

---

[1] Throughout this opinion, our use of the term "plaintiffs" refers to Keldon Scott and Sandra Scott only.

filled plaintiffs' tank, plaintiffs winterized their home and closed it for the winter, including turning off the furnace.

In January 2019, defendant returned to fill plaintiffs' heating oil tank. Hoaglund again did not hear the whistle and filled the 275-gallon tank with over 285 gallons of oil. When plaintiffs received the invoice for the delivery, they drove to their summer home to determine why they would have needed 285 gallons of oil when the cottage was closed for the winter and the furnace should not have been running. Plaintiffs discovered that the lower level of their home was flooded with heating oil. Plaintiffs filed a claim with Farm Bureau Mutual Insurance Company of Michigan for the damage caused and environmental cleanup. Plaintiffs filed a complaint against defendant alleging claims of breach of contract and negligence. The trial court dismissed plaintiffs' claims upon defendant's motion for summary disposition. This appeal follows.

## I. STANDARDS OF REVIEW

We review a trial court's decision to grant or deny summary disposition de novo. *Estate of Voutsaras v Bender*, 326 Mich App 667, 671; 929 NW2d 809 (2019). We also review whether a defendant owes a duty to a plaintiff to avoid negligent conduct de novo as a question of law. *In re Certified Question from Fourteenth Dist Court of Appeals of Texas*, 479 Mich 498, 504; 740 NW2d 206 (2007).

"A motion under MCR 2.116(C)(8) tests the legal sufficiency of a claim based on the factual allegations in the complaint." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019) (emphasis omitted). "When considering such a motion, a trial court must accept all factual allegations as true, deciding the motion on the pleadings alone." *Id*. at 160. "A motion under MCR 2.116(C)(8) may only be granted when a claim is so clearly unenforceable that no factual development could possibly justify recovery." *Id*.

Summary disposition is appropriate under MCR 2.116(C)(10) if, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." The moving party "must specifically identify the issues as to which the moving party believes there is no genuine issue as to any material fact" and support its motion with documentary evidence. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999), citing MCR 2.116(G)(4). A court reviewing a motion under MCR 2.116(C)(10) must consider the substantively admissible evidence offered in opposition to the motion. *Maiden*, 461 Mich at 121. To survive summary disposition, the opposing party must set forth specific facts establishing a genuine issue of material fact for trial. *Id*. at 120. A genuine issue of material fact exists when the evidence presented "leave[s] open an issue upon which reasonable minds might differ." *Debano-Griffin v Lake Co*, 493 Mich 167, 175; 828 NW2d 634 (2013) (quotation marks and citation omitted).

"The trial court appropriately grants summary disposition to the opposing party under MCR 2.116(I)(2) when it appears to the court that the opposing party, rather than the moving party, is entitled to judgment as a matter of law." *BC Tile & Marble Co, Inc v Multi Bldg Co, Inc*, 288 Mich App 576, 590; 794 NW2d 76 (2010) (quotation marks and citation omitted).

## II. NEGLIGENCE

Plaintiffs argue that the trial court erred by granting defendant's motion for summary disposition because the trial court erroneously concluded that defendant did not owe plaintiffs a duty. We agree.

"To establish a prima facie case of negligence, a plaintiff must prove the following elements: (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the legal duty, (3) the plaintiff suffered damages, and (4) the defendant's breach was a proximate cause of the plaintiff's damages." *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 162; 809 NW2d 553 (2011). A defendant cannot be held liable to a plaintiff unless the defendant owed the plaintiff a legal duty. *Id*. "Every person engaged in the performance of an undertaking has a duty to use due care or to not unreasonably endanger the person or property of others." *Hill v Sears, Roebuck & Co*, 492 Mich 651, 660; 822 NW2d 190 (2012). Duty "is essentially a question whether the relationship between the actor and the injured person gives rise to any legal obligation on the actor's part for the benefit of the injured person." *Kandil-Elsayed v F & E Oil Inc*, 512 Mich 95, 110; 1 NW3d 44 (2023) (quotation marks and citation omitted). In addition to the relationship between the parties, courts consider several factors to determine whether a duty is owed, including "(1) foreseeability of the harm, (2) degree of certainty of injury, (3) closeness of connection between the conduct and injury, (4) moral blame attached to the conduct, (5) policy of preventing future harm, and (6) the burdens and consequences of imposing a duty and the resulting liability for breach." *Id*. (quotation marks and citation omitted).

Defendant and plaintiffs had a relationship based on their oral agreement for defendant to fill plaintiffs' tank with heating oil on defendant's keep full program. Defendant delivered heating oil to plaintiffs' tank to keep the tank full, and that was the extent of their agreement.

In *Girvan v Fuelgas Co*, 238 Mich App 703, 714; 607 NW2d 116 (1999), this Court held that

> the supplier of a dangerous commodity has a duty to ensure that its product is delivered safely to the exterior of the premises of the end user but, in the absence of an agreement to do otherwise, that duty does not extend to the inspection of the interior lines, conduits, and appliances over which the supplier has no control.

This Court noted that "Michigan courts have traditionally imposed on the suppliers of dangerous commodities a high standard of care in supplying those commodities—a standard commensurate with the danger of the product." *Id*. at 713. Because defendant was delivering heating oil, which is a dangerous commodity, harm was foreseeable if defendant failed to take precautions in delivering the oil. Therefore, the trial court erred by ruling that defendant did not have a duty to plaintiffs because there was no foreseeable harm.

Despite concluding that defendant did not have a duty in this case because the January overfull was unforeseeable, the court also acknowledged defendant's general duty to act with due care in delivering oil to plaintiffs' home. The court opined that plaintiffs wanted the trial court to hold defendant to a higher standard to communicate the overfills to plaintiffs, share the issues with the vent whistle, and inspect the heating oil system. However, in their complaint, plaintiffs alleged

that defendant had a duty to not overfill the tank and to pump in the oil in a manner that would not cause damage to the property of others. Plaintiffs did not allege that defendant had a duty to communicate the overfills to plaintiffs, inform plaintiffs of the absence of the vent whistle, or to inspect the heating oil system. See *id*. at 714. Because defendant based its motion for summary disposition under MCR 2.116(C)(8) on its argument that defendant did not owe plaintiffs a duty, the trial court erred by dismissing plaintiffs' negligence claim under MCR 2.116(C)(8). Plaintiffs' complaint adequately set forth a claim for negligence. See *Dalley v Dykema Gossett*, 287 Mich App 296, 305; 788 NW2d 679 (2010) ("Summary disposition on the basis of subrule (C)(8) should be granted only when the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify a right of recovery.") (quotation marks and citation omitted).

The trial court also erred by granting defendant's motion pursuant to MCR 2.116(C)(10). Plaintiffs presented sufficient evidence to establish a genuine issue of material fact whether defendant breached its duty to safely deliver heating oil to plaintiffs' premises. Michael Williams, a certified underground and aboveground tank professional, unequivocally testified that if Hoaglund did not hear the whistle, he should have stopped pumping immediately because the absence of a whistle signaled a problem. Williams stated that it was "fuel delivery 101" for a driver to stop pumping if he did not hear a whistle. Williams believed that the tank was full when Hoaglund began pumping in January and that the oil flowed out of the top of the tank when Hoaglund began pumping oil. Bruce Clarke, who worked for Williams, also testified that Hoaglund should have stopped pumping when he did not hear the whistle because the lack of whistle signaled a potential problem. Williams testified that if defendant did not have a duty to inspect plaintiffs' tank, Hoaglund should have, at the very least, stopped pumping and notified his employer that there was a potential problem with plaintiffs' tank.

In contrast, Hoaglund testified that the November fill was slow and he considered the slow fill the reason why he could not hear the whistle. Hoaglund testified:

> *Q*. What do you remember about that delivery?
>
> *A*. First time I'd been there ever. It was a very slow fill. So, you know, couldn't put in the lock, I'd say the (inaudible) the nozzle or the trigger on that one.
>
> \* \* \*
>
> *Q*. And your only—you basically fill it to whatever comes up to the top of it?
>
> *A*. It depends, yeah. Its—like with that being a slow fill, you can't hear— like hear it coming out of the vent (sic). So when I was there that time, I filled it till a little bit of oil came out of the vent.

Hoaglund's reasoning for the absence of the whistle conflicted with both Williams's and Clarke's testimony. Summary disposition is improper where there is conflicting evidence with regard to an element of the plaintiff's prima facie case. *Patrick v Turkelson*, 322 Mich App 595, 606; 913 NW2d 369 (2018). Whether Hoaglund breached the duty to deliver the oil with care was a question for the jury. *Kandil-Elsayed*, 512 Mich at 112.

Plaintiffs also argue that the trial court erred by finding that defendant's overfilling of the tank was not the proximate cause of their damages. "Proximate cause is an essential element of a negligence claim." *Ray v Swager*, 501 Mich 52, 63; 903 NW2d 366 (2017). In order to determine proximate cause, the trial court "must find that the defendant's negligence was a cause in fact of the plaintiff's injuries before it can hold that the defendant's negligence was the proximate or legal cause of those injuries." *Patrick*, 322 Mich App at 616 (quotation marks and citation omitted). A plaintiff must "present substantial evidence from which a jury may conclude that more likely than not, but for defendant's conduct, the plaintiff's injuries would not have occurred." *Id.* at 617 (quotation marks and citation omitted). In order to survive a motion for summary disposition, a plaintiff must present enough evidence to create a question of fact establishing "a logical sequence of cause and effect . . . ." *Id.* (quotation marks and citation omitted).

Plaintiffs presented enough evidence from which a jury could conclude that plaintiffs would not have suffered damages, but for defendant's conduct. Plaintiffs presented evidence that Hoaglund should have stopped pumping oil when he did not hear the whistle. Clarke testified that the fuel gauge clearly failed when it was displaced by excess oil. Williams also testified that the fuel gauge was damaged during Hoaglund's delivery of the oil and that excess oil escaped the tank through the fuel gauge opening. Thus, a jury could conclude that Hoaglund's failure to stop pumping, in spite of several warning signs, led to the overfilling of the tank, which displaced the fuel gauge and caused excess oil to overflow and damage plaintiffs' property. This evidence established "a logical sequence of cause and effect" sufficient to survive a motion for summary disposition. *Id.*

Next, a plaintiff must establish legal cause or "that it was foreseeable that the defendant's conduct may create a risk of harm to the victim, . . . and [that] the result of that conduct and intervening causes were foreseeable." *Id.* (quotation marks and citation omitted; alterations in original). As discussed, Williams and Clarke testified that the lack of a whistle sound signaled a malfunction in the system, and Hoaglund should have stopped pumping immediately. The whistle sound was created by the air escaping the tank as the oil entered it. When Hoaglund did not hear the whistle, he should have realized that the oil was no longer displacing any air and the tank was overfilling. Additionally, as Hoaglund continued to fill the tank over its capacity, no oil escaped through the vent pipe. Filling the tank beyond its capacity would naturally force the oil to go somewhere. In this case, there was evidence that the excess oil displaced the fuel gauge to exit the tank. It was foreseeable that overfilling the tank would displace the fuel gauge causing oil to spill out and damage plaintiffs' property. Thus, plaintiffs presented sufficient evidence to create a genuine issue of material fact that defendant's negligence was the proximate cause of plaintiffs' damages. The trial court erred by granting defendant's motion for summary disposition pursuant to both MCR 2.116(C)(8) and (C)(10).

## III. BREACH OF CONTRACT

Plaintiffs also argue that the trial court erred by dismissing their breach-of-contract claim pursuant to MCR 2.116(C)(8) and (C)(10). We agree.

"A party asserting a breach of contract must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co v Ahrens Const, Inc*, 495 Mich 161, 178; 848

NW2d 95 (2015). "[A]ccompanying every contract is a common-law duty to perform with ordinary care the thing agreed to be done, and . . . negligent performance constitutes a tort as well as a breach of contract." *Fultz v Union-Commerce Assoc*, 470 Mich 460, 465; 683 NW2d 587 (2004) (quotation marks and citation omitted). Indeed, a breach-of-contract action may arise when "a party fails to perform a service contract in a skillful and workmanlike manner . . . ." *Johnson v Mich Minority Purchasing Council*, 341 Mich App 1, 16 n 5; 988 NW2d 800 (2022).

Plaintiffs alleged that they hired defendant to supply heating oil for their home. Plaintiffs claimed that defendant had an obligation to deliver the oil in a reasonably skillful and workmanlike manner. Plaintiffs alleged that defendant breached the contract by delivering 285.9 gallons of oil when plaintiffs' 275-gallon tank was full or nearly full. Plaintiffs asserted that as a result of defendant's breach, plaintiffs suffered damages when oil flooded the lower level of their home, the oil contaminated the soil and ground around the home, and there were lingering oil fumes in the home. Plaintiffs alleged that they suffered damages arising from the environmental cleanup required by the spill and destruction of their personal property.

The trial court found that plaintiffs failed to allege how defendant acted in a negligent manner or that defendant had actual knowledge that the tank was full in January 2019. However, plaintiffs properly alleged the existence of a contract, breach by defendant, and resulting damages. Plaintiffs' assertions were legally sufficient for their breach-of-contract claim to survive a motion pursuant to MCR 2.116(C)(8).

There was also a genuine issue of material fact whether defendant breached the contract. The trial court found that defendant safely delivered oil to plaintiffs' home in January 2019. The trial court noted that the parties did not have an agreement for defendant to enter the crawl space to perform inspections or maintenance on plaintiffs' heating oil system. However, as already discussed, plaintiffs were not alleging that defendant should have inspected the tank. Williams and Clarke testified that Hoaglund should have immediately stopped pumping oil when he did not hear the whistle. Williams and Clarke testified that Hoaglund should have realized the absence of the whistle signaled a problem and immediately stopped pumping. However, Hoaglund continued to pump oil into the tank 10 gallons over the 275-gallon capacity of the tank. Furthermore, Hoaglund testified that he walked back to his truck twice to check the amount of oil he had pumped into the tank, indicating his concern that there was a problem. The witnesses' conflicting testimony demonstrated a genuine issue of material fact whether defendant breached the contract and whether that breach caused plaintiffs' damages. See *Patrick*, 322 Mich App at 606. The trial court erred by dismissing plaintiffs' breach-of-contract claim under both MCR 2.116(C)(8) and (C)(10).

IV. PLAINTIFFS' CLAIM FOR SUMMARY DISPOSITION UNDER MCR 2.116(I)(2)

Finally, plaintiffs argue that they were entitled to summary disposition under MCR 2.116(I)(2). We disagree.

Because we have found that genuine issues of material fact exist as to plaintiffs' claims, we find that the trial court did not err by denying plaintiffs' request for summary disposition pursuant to MCR 2.116(I)(2). See *BC Tile & Marble Co, Inc*, 288 Mich App at 590. Moreover, we do not view defendant's failure to offer any expert testimony to refute plaintiffs' experts as dispositive under MCR 2.116(I)(2). "A trial court should use its common sense to decide whether

an untrained person would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from experts." *Zeeland Farm Servs, Inc v JBL Enterprises, Inc*, 219 Mich App 190, 196-197; 555 NW2d 733 (1996). Hoaglund had been working for defendant, pumping oil for its customers for about six months, and he was able to testify as to his experience pumping oil into plaintiffs' tank. Therefore, Hoaglund's testimony was properly admitted and sufficient to at least create a material factual dispute regarding whether his actions breached defendant's duty of care or the contract between the parties. Plaintiffs were not entitled to summary disposition pursuant to MCR 2.116(I)(2).

Reversed in part, affirmed in part, and remanded for further proceedings. We do not retain jurisdiction.

/s/ Michael J. Kelly
/s/ James Robert Redford
/s/ Kathleen A. Feeney